## In re NELLIES.

### No. 1244.

District Court, W. D. Washington, N. D.

June 28, 1945.

George A. Custer, Supervising Conciliation Com'r, of Seattle, Wash., Uriah D. Gnagey, Conciliation Commissioner-Referee, of Bellingham, Wash., and McMicken, Rupp & Schweppe and Bernard Reiter, all of Seattle, Wash., for creditor.

BLACK, District Judge.

This matter has come before the court upon the following:

(1) The report of the Conciliation Commissioner-Referee advising, in substance and effect, that the bankrupt has made the San Juan County Bank of Friday Harbor an escrow holder and has deposited with it the sum of thirty-seven hundred dollars, representing the appraised value of the real estate covered by the contract of sale between Katharine Woolston as seller and the said bankrupt as purchaser, with instructions to deliver the same to "Catharine Woolston upon her delivery to the Bank a proper conveyance to the Bankrupt together with title insurance, as provided in the contract of sale" and praying that the bankrupt be allowed to redeem such property for such amount;

(2) The request by the said seller for a sale at public auction of the said real property with right of the said seller to bid at such sale and with the right to said bankrupt to redeem therefrom within ninety (90) days from the date of any such sale; and

(3) The objections and exceptions of the said seller as a secured creditor and only creditor herein to the said report of the Conciliation Commissioner-Referee and particularly to that portion thereof requesting that said bankrupt be allowed to redeem the real property at the appraised value of $3700 as fixed by the court upon the ground that such would be contrary to such creditor's rights under the Constitution of the United States and particularly the Fifth Amendment thereto.

11 U.S.C.A. § 203, sub. s(3), being applicable to this farmer-debtor proceeding, provides:

"(3) At the end of three years, or prior thereto, the 'debtor may pay into court the amount of the appraisal of the property of which he retains possession, including the amount of encumbrances on his exemptions, up to the amount of the appraisal, less the amount paid on principal: * * * Provided that upon request in writing by any secured creditor or creditors, the court shall order the property upon which such secured creditors have a lien to be sold at public auction. The debtor shall have ninety days to redeem any property sold at such sale, by paying the amount for which any such property was sold, together with 5 per centum per annum interest, into court * * *. If, however, the debtor at any time fails to comply with the provisions of this section * * * within three years, the court may * * * order the property sold * * *."

The three-year period for redemption began on January 12, 1942.

It may be added that the personal property of the estate was appraised at $1455. Of such the Conciliation Commissioner-Referee set aside personal property of the value of $275 as exempt. This left the appraised value of the balance at $1180.

Since the bankrupt was placed in possession of the real property of the appraised

value of $3700 and of personal property of an appraised value of $1180, exclusive of exemptions, or a total appraisal of $4880, it would seem that there is much force in the creditor's contention that, in the words of the statute, "the debtor" should "pay into court the amount of the appraisal of the property of which he retains possession."

In any event the debtor has not sought to redeem more than a portion of the property of which she retained possession. It is agreed that the court early in 1942 determined such real estate to have a value of $3700.

The statute is clear to the effect that in order to entitle the debtor to a redemption the debtor must "pay into court the amount of the appraisal." If the debtor complies with the requirement of the statute "the court shall, by an order, turn over full possession and title of said property, free and clear of encumbrances to the debtor." That is, under the statute the debtor pays the money into court and secures title by an order of the court. In the present instance the debtor has paid no money into court. The court is advised that she has arranged an outside escrow for an amount equal to an appraisal of a portion of the property of which she retained possession. She asks not title through an order of the court but instead demands a conveyance directly from the secured creditor and also title insurance.

It is unnecessary in this instant case to determine whether or not under the statute the farmer-debtor would have a right to redeem the real property instead of all the property of which she retained possession. Inasmuch as the statute is to be liberally construed in favor of the farmer-debtor the court is inclined to the opinion that the bankrupt could have redeemed the farm without redeeming the personalty. This, however, is merely an expression of inclination and is not a ruling as to the right of the farmer-debtor to redeem a portion instead of "the property." In any event neither the letter nor the spirit of the law would justify this court in giving to this bankrupt the right to so materially amend the statute as to allow her to substitute "an escrow holder" for the court and to demand title insurance from the secured creditor rather than title through court order as specified by the statute. To permit this bankrupt to so substantially amend the statute would establish a precedent for increasing departures from the statute by subsequent farmer-debtors. Some later farmer-debtor instead of selecting a bank as escrow holder might designate some individual, contending that he should have as much right to designate his escrow holder as the instant bankrupt should to designate hers. In any event it is Congress rather than the bankrupt or this court which has the sole power to amend the statute. The present requirement that the money be paid into court is definite and positive.

No money having been paid into court and the farmer-debtor having demanded a conveyance of the real estate and title insurance from the creditor rather than by court order, this court must hold that the bankrupt is not entitled to the real property.

Therefore, the creditor is entitled to have a sale of such real property as prayed for with the right of bidding at such sale, all subject to the bankrupt's right to redeem from such sale as specified in the statute.

The creditor has contended in connection with this matter that in the event the court should hold that the escrow of $3700 constituted a redemption of the real property that this sum should only apply on account of the creditor's secured claim and that the personal property should be applied towards payment of the deficiency. In passing it may be said that from the files such deficiency would appear to be approximately five or six hundred dollars. The bankrupt on the contrary insists that the $3700 is a full discharge of the creditor's claim, that the unpaid balance should be cancelled, and that the personalty should be set over to the bankrupt without regard to any deficiency.

If the court were upholding the validity of the bankrupt's escrow certainly under the law and decisions applicable and in all fairness the sole creditor would be entitled to have the personal property sold under court order in order to pay any such deficiency.

Presentation, after notice, of order in conformity with the foregoing is requested.

Inasmuch as no written order by the court fixing the value of the real property at thirty-seven hundred ($3700) dollars in accordance with the court's finding and determination is found on file it is appropriate that a separate nunc pro tunc order to such effect as of January 12, 1942, should also be formally entered.